UNITED STATES DISTRICT
EASTERN DISTRICT OF TENNESEE
AT GREENVILLE

| | | |
|---|---|---|
| **RANDALL BETHEA  on behalf  of himself and** | ) | |
| **all  others similarly situated in Tennessee** | ) | |
| **and JAMES PADGETT on behalf of himself** | ) | |
| **and all other non-Tennessee residents,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CHAMPION LABORATORIES, INC.;** | ) | |
| **PUROLATOR FILTERS N.A., LLC;** | ) | |
| **HONEYWELL INTERNATIONAL, INC.;** | ) | |
| **WIX FILTRATION CORP.; THE** | ) | |
| **DONALDSON COMPANY; BALDWIN** | ) | |
| **FILTERS, INC.; BOSCH USA; MANN +** | ) | |
| **HUMMELL USA, INC.;ARVINMERITOR,** | ) | |
| **INC. and JOHN DOE DEFENDANTS 1-100** | ) | |
| | ) | |
| **Defendants.** | ) | |

Plaintiffs James Padgett and Randall Bethea (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Champion Laboratories, Inc., Purolator Filters N.A., LLC, Honeywell International, Inc., Wix Filtration Corp., The Donaldson Company, Baldwin Filters, Inc., Bosch USA, Mann + Hummell USA, Inc., and Arvinmeritor, Inc., (hereinafter "Defendants").

Plaintiffs make the following allegations on information and belief, except as to those paragraphs that pertain to Plaintiffs, which are based upon personal knowledge. Plaintiffs' information and belief is based on, inter alia, the investigation made by their attorneys. This action is brought on behalf of three separate classes:

1

(I) Indirect Purchasers in the following states: Alabama, Arizona, California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin.

(II) Indirect Purchasers outside Tennessee but availing themselves of Tennessee anti-trust law in the following states: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. *See Freeman Indus., LLC. v. Eastman Chemical Co,* 172 S.W.3d 512, 516 (Tenn. 2005).

(III) A nationwide class of Indirect Unjust Enrichment Purchasers including the following states: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and West Virginia.

## I. NATURE OF ACTION

1.      This case involves an anticompetitive conspiracy by Defendants or their predecessors, controlled subsidiaries, or affiliates to raise, fix, maintain and/or stabilize prices in the United States markets for replacement oil, air, fuel and transmission filters ("Filters").

2.      Filters are utilized to remove contaminants from combustion engines and related systems. Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders; and transmission filters ensure the proper functioning of an engine's hydraulic and transmission systems.

3.      Filters become less effective over time as contaminants are filtered out of the respective engine systems, and they are designed to be replaced periodically. As previously

noted, this case involves a conspiracy which affected the markets for replacement Filters. Replacement Filters are purchased to replace original equipment filters.

4. Filters are primarily purchased from vendors of automotive parts.

5. This case arises in part from a sworn affidavit executed on March 25, 2008 by a former employee of two of the Defendants in litigation pending in the Southern District of Illinois against Defendant Champion. Champion Laboratories, Inc. v. Burch, 06-CV-4031 (JPG)(S.D.Ill.). As described below, this affidavit and additional specific allegations detail Defendants' price-fixing conspiracy. (A copy of the affidavit is attached hereto as exhibit "A.")

6. Many of the allegations contained herein, particularly those with respect to the specifics of a meeting between the Defendants, are based on alleged recorded conversations and the personal knowledge of this former employee, a former National Accounts and Division Sales Manager of Defendant Champion.

7. Upon information and belief, this former employee will testify that Defendants conspired and agreed to coordinate prices, rig bids, and allocate customers from at least January 1, 1999 to the present (the "Class Period").

8. As a Division Sales Manager responsible for monitoring and coordinating terms of sales, the former employee was privy to, among other things, exchanges of confidential pricing materials by which Defendants unlawfully agreed to the timing and magnitude of price increases throughout the Class Period.

9. Because of Defendants' wrongful conduct, Plaintiff and the other members of the Class defined below paid artificially inflated prices for Filters, thereby suffering antitrust injury to their business and property. Defendants' actions constitute *per se* violations of the Tennessee Trade Practices Act.

3

10. This action seeks to recover damages on behalf of Plaintiff and a nationwide class of indirect purchasers of Filters pursuant to the Tennessee Trade Practices Act and common law.

## II. JURISDICTION AND VENUE

11. This Court has personal jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at, and/or caused injury to persons and entities residing in, located in, or doing business in this District. This Court also has jurisdiction pursuant to 28 U.S.C. 1332(d) in that this case is a class action wherein the matter of controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs.

12. Venue is proper in this judicial district pursuant to 15 U.S.C. 22 and 28 U.S.C. 1391(b) and (c) because the Defendants reside in, are licensed to do business or are doing business in this District, or are found or transact business in this District, and/or the claims arose in this District.

## III. PARTIES

### A. PLAINTIFFS

13. Plaintiff James Padgett is a resident of Florida and Plaintiff Randall Bethea is a resident of Tennessee.

### B. DEFENDANTS

14. Defendant Champion Laboratories, Inc. is a corporation headquartered at 200 S. Fourth Street, Albion, Illinois 62806.

15. Defendant Purolator Filters N.A., LLC, is a corporation headquartered in Fayetteville, North Carolina with a mailing address listed with the North Carolina Secretary of State as 2800 South 25th Avenue, Broadview, Illinois 60565. Purolator Filters N.A., LLC is a joint venture between Bosch USA and Mann + Hummel USA, Inc.

4

16. Defendant Honeywell International is headquartered at 101 Columbia Road, Morristown, New Jersey, 07962.

17. Defendant Bosch USA is headquartered at 2800 S. 25th Avenue, Broadview, Illinois 60155.

18. Defendant Mann + Hummel USA, Inc. is headquartered at 6400 S. Sprinkle Road, Portage, Michigan, with its business address at 6400 S. Sprinkle Road, Portage, Michigan 49002.

19. Defendant ArvinMeritor, Inc. is headquartered at 2135 West Maple Road, Troy, Michigan 48084. ArvinMeritor,Inc. owned Purolator Filters N.A., LLC from January 1999 through March 2006, at which point it sold Purolator Filters N.A., LLC to Bosch USA and Mann + Hummel USA, Inc. Purolator Filters N.A., LLC, Bosch USA, Mann + Hummel USA, Inc. and ArvinMeritor, Inc. are hereinafter collectively referred to as "Purolator."

20. Defendant Wix Filtration Corp., LLC ("Wix") is headquartered in Gastonia, North Carolina and has a mailing address of 1101 Technology Drive, Ann Arbor, Michigan 48108.

21. Defendant Honeywell International, Inc. ("Honeywell") is headquartered at 101 Columbia Road, Morristown, New Jersey 07962.

22. Defendant Cummins Filtration, Inc. ("Cummins") is headquartered at 2931 Elm Hill Pike, Nashville, Tennessee 37214.

23. Defendant The Donaldson Company ("Donaldson") is a corporation headquartered at 1400 W 94th Street, Minneapolis, Minnesota 55431.

24. Defendant Baldwin Filters, Inc. ("Baldwin") is headquartered at 4400 E Highway 30, Kearney, Nebraska 68848.

5

## IV. CLASS ACTION ALLEGATIONS

25.    Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a class action under Rules 23(a), (b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. All class members are hereinafter referred to as the "Class," subject to additional information obtained through further investigation and discovery. The classes are defined as:

> **All persons who purchased Filters in the United States indirectly and not for resale from the Defendants or any of their parents, affiliates, subsidiaries, or predecessors in interest, at any time during the period from January 1, 1999 through and until the date the illegal conduct ceases. Excluded from the Class are Defendants, their officers, directors, management, employees, subsidiaries, or affiliates and all entities owned by the federal government.**
>
> **a) All persons or entities who, from January 1, 1999 through and until the date the illegal conduct ceases, indirectly and not for resale purchased Filters in Tennessee and the following Indirect Purchaser States: Alabama, Arizona, California, District of Columbia, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nevada, New Jersey, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.**
>
> **b) All non-residents of Tennessee, who, from January 1, 1999 through and until the date the illegal conduct ceases, indirectly and not for resale purchased Filters, including: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Hampshire, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, Wisconsin and Wyoming. *See Freeman Indus., LLC. v. Eastman Chemical Co.,* 172 S.W.3d 512, 516 (Tenn. 2005).**
>
> **c) A nationwide class of Unjust Enrichment Purchasers who, from January 1, 1999 through and until the date the illegal conduct ceases, indirectly and not for resale purchased Filters in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.**
>
> **Excluded from the Class are Defendants, any subsidiaries or affiliates of Defendants, any of Defendants' co-conspirators, whether or not named as a**

**Defendant in this Complaint, governmental entities, judges, justice or judicial officers presiding over this matter and members of their family. Also excluded from the Class are the legal representatives, heirs, successors, and attorneys for any excluded person or entity, and any person acting on behalf of any excluded person or entity.**

26.     The Class is so numerous that joinder of all members is impracticable. Due to the

nature of the trade or the commerce involved, Plaintiffs believe that the members of the Class are

geographically dispersed throughout the world, including throughout the United States, and that

joinder of al Class members would be impracticable. While the exact number of Class members

is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, thousands of

members of the Class and that their identities can be learned from Defendants' and their co-

conspirators' books and records.

27.     Plaintiffs' claims are typical of the claims of the other members of the Class.

Plaintiffs and members of the Class purchased Filters at artificially maintained, non-competitive

prices established by the actions of Defendants and their unnamed co-conspirators in connection

with the restraint of trade alleged herein. Plaintiffs and members of the Class have all sustained

damage in that they paid inflated prices for the Filters due to Defendants' conduct in violation of

state law as complained of herein.

28.     Plaintiffs will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class action and antitrust litigation.

29.     Common questions of law and fact exist as to all members of the Class which

predominate over any questions affecting solely individual members of the Class. Among the

questions of law and fact common to the Class are:

> **(a)     Whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain or stabilize the price of Filters;**
>
> **(b)     Whether the combination or conspiracy caused the price of Filters to be higher than they would have been absent Defendants' conduct;**

7

      **(c)**      **Whether Defendants undertook actions to conceal the unlawful conspiracies, contracts or combinations described herein; and**

      **(d)**      **Whether Defendants' conduct violated the relevant state antitrust laws and common law and caused injury to the business and property of Plaintiffs and the Class and, if so, the proper measure of damages.**

30.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

31.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants. Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

## V. FACTUAL ALLEGATIONS

### A. Overview of the Filters Markets

32.     Oil, air, fuel and transmission filters are primarily sold in two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

33.     OEMs purchase filters for use in connection with new vehicles. These filters are installed in vehicles during the production process.

34. Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals to replace their own filters.

35. Defendants are the primary manufacturers of Filters purchased by Aftermarket Sellers, and this litigation involves a conspiracy to fix the prices for replacement Filters bought by these direct purchasers and sold to indirect purchasers.

36. The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products. This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy. For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to Defendants Bosch and Mann + Hammel. Defendants Bosch and Mann now operate Defendant Purolator as a joint venture. Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

37. Annual revenues for Filters markets in the United States are approximately $3 billion to $5 billion.

**B. Defendants' Unlawful Conduct**

38. Beginning at least as early as January 1, 1999 and continuing thereafter, Defendants and their co-conspirators participated in a continuing agreement, combination, and conspiracy to artificially fix, raise, maintain, or stabilize prices for Filters in the United States. Defendants acted in furtherance of their scheme by, among other things, (i) having their officers and/or representatives meet at industry trade shows and other locations to set prices and (ii) exchanging confidential information regarding pricing.

9

39.     As a result of their unlawful actions, Defendants were able to force coordinated

price increases on the Filters markets.

40.     Defendants' unlawful conduct took many forms, including, but not limited to:

a.      attending meetings and/or otherwise exchanging information regarding the

pricing and sale of Filters;

b.      selling Filters to customers at collusive and non-competitive prices;

c.      agreeing to sell Filters at specified, pre-arranged prices;

d.      agreeing not to compete for each other's customers;

e.      accepting payment at non-competitive prices;

f.      giving actual and/or apparent authority to employees' participation in

furtherance of the wrongful conduct; and

g.      fraudulently concealing the wrongful conduct.

41.     Specific allegations of Defendants' unlawful conduct include, but are not limited

to:

a.      On June 28, 1999 a Purolator executive faxed an executive at Honeywell
a letter which announced a 6% increase on all Purolator-branded filters
effective August 15, 1999, but did not send a price increase notification to
Purolator's customers until July 1999.

b.      At a trade convention called the Heritage Show in May 1999,
representatives of Defendants agreed in person, on behalf of their
respective employers, to raise prices for Filters, and Defendants later
raised prices in accordance with the wrongful agreements reached at the
Heritage Show.

c.      In February 2004, Champion's President informed his sales team that
Champion was about to raise prices and told them to make sure
Champion's "competitors" were aware of the increase and adjusted their
prices accordingly, both in timing and amount, pursuant to wrongful
agreements previously reached, which the employees accomplished by
meeting with Defendants' representatives.

10

      d.      In 2004, an internal Champion e-mail with the subject line "Price Increases" confirmed that the other Defendants were in agreement regarding a coordinated price increase.

      e.      Pursuant to the unlawful agreement, Defendants each instituted similar price increases, in amounts of approximately 4-6%, at the same times.

42.      Upon information and belief, Defendants engaged in repeated in-person meetings to further their anti-competitive scheme. Many of these meetings occurred at the annual Filter Manufacturers Council Meeting in Nashville, Tennessee. The Filter Manufacturers Council Is a trade organization comprised of Defendants and other industry participants.

43.      On January 19, 2006, William G. Burch, a former employee of both Purolator N.A., LLC and Champion Laboratories, Inc. ("Champion"), filed a complaint against Champion in state court in Tulsa, Oklahoma alleging, among other things, that Mr. Burch was wrongfully terminated from his employment with Champion for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in the Pending Actions. This complaint was removed to federal court and then transferred to Illinois for consolidation with a subsequently filed action, *Champion Labs., Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

44.      On March 25, 2008, Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an Affidavit under oath in connection with the Champion Labs case. This affidavit, which was made on the basis of personal knowledge, stated as follows:

      a.      Burch "became aware that Champion was involved with their competitors in activities that constitute price-fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its

11

competitors. Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

    b.  Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

45.  Defendants' wrongful conduct in manipulating prices was undertaken in order to charge artificially inflated prices for Filters.

46.  Defendants' wrongful conduct deprived Plaintiff and members of the Class the ability to transfer their business in response to price increases.

47.  Had Defendants not engaged in the illegal conduct alleged herein, Plaintiff and other members of the Class would have been able to purchase Filters that were competitively priced.

## V. TRADE AND COMMERCE

48.  Throughout the Class Period, there has been a continuous and uninterrupted flow of transactions in and shipments of Filters in interstate commerce throughout the Tennessee and the United States.

49.  The unlawful activities of Defendants and the unnamed co-conspirators have been within the flow of, and have had a substantial and reasonably foreseeable effect on Tennessee commerce.

## VI. EFFECTS ON COMPETITION

50.  Defendants' unlawful conduct has stifled competition in Filters markets and has had a direct, substantial, and adverse effect on competition by artificially increasing prices and stifling innovation in Tennessee and the United States.

12

## VII. CO-CONSPIRATORS

51.    Defendants John Doe 1-100 are presently not ascertainable by Plaintiffs and their true identities are within the exclusive knowledge of Defendants. The Complaint in this action will be amended when their true identities are known.

52.    The acts alleged in this Complaint have been performed by Defendants and their co-conspirators, or were authorized, ordered or completed by their respective officers, employees, or representatives, while actively engaged in the management of Defendants' companies.

53.    Each of the Defendants named herein acted as an agent or trustee with respect to the acts, violations and common course of conduct alleged herein.

## VIII. DAMAGES

54.    As a consequence of Defendants' antitrust violations, Plaintiff and the Class have sustained substantial losses and damages to their property in the form of overcharges for Filters. Plaintiff and the Class are threatened with further injury unless Defendants are enjoined from continuing the unlawful conduct alleged herein and from entering into any other combinations, conspiracies or agreements having similar purposes and effects. All Class members were affected in the same manner by Defendants' anticompetitive conduct.

## IX. ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFFS AND THE CLASS

55.    Due to Defendants' price-fixing and market-allocation activities, Filters prices increased illegally in Tennessee and Class States despite fluctuations in the cost of production.

56.    During the Class Period, Filters prices did not follow the laws of supply and demand existing in competitive markets, including markets in Tennessee and the Class States.

13

57.    Defendants' arrangement, contract or agreement to fix, raise, maintain or stabilize

the prices of Filters marketed, distributed or sold in Tennessee and the Class States and to

manipulate and allocate the market for Filters marketed, distributed or sold in Tennessee and the

Class States had the following effects:

> (a)    The price of Filters indirectly purchased by Plaintiffs and the Class
> Members was fixed, raised, maintained and stabilized at inflated, artificial
> and non-competitive levels;
>
> (b)    Plaintiffs and the Class Members paid higher prices for Filters than they
> would have paid in the absence of the conspiracy alleged herein;
>
> (c)    The actions of Defendants and their co-conspirators relating to price-
> fixing and market-allocation conspiracy were perpetrated against and
> affected commerce in Tennessee, and these actions, including forging
> alliances to implement their conspiracy, occurred, in significant part, in
> Tennessee. Accordingly, the actions of Defendants and their co-
> conspirators substantially affected Tennessee commerce.

58.    During the Class Period, Plaintiffs and the Class Members indirectly purchased

millions of dollars of Filters from Defendants. By reason of Defendants' violations of the

Tennessee Trade Practices Act, Plaintiffs and the Class Members paid significantly more for

Filters than they would have paid in the absence of Defendants' illegal combination and

conspiracy, and, as a result, Plaintiffs and the Class Members were injured and have suffered

damages in an amount presently undetermined.

## X. FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

59.    Defendants fraudulently concealed their participation in the conspiracy alleged

herein by, inter alia, engaging in secret meetings and communications in furtherance of the

conspiracy, and by holding themselves out as competitors to the public, to Plaintiffs, and to the

Class. Because of such fraudulent concealment, and the fact that a price fixing conspiracy is

inherently self-concealing, Plaintiffs and the Class could not have discovered the existence of the

conspiracy any earlier than its public disclosure.

14

60.     Defendants and their co-conspirators actively, intentionally, and fraudulently concealed the existence of the arrangement, contract or agreement to fix, raise, maintain or stabilize the prices of Filters marketed, distributed or sold in Tennessee and Class States and to manipulate and allocate the market for Filters distributed, marketed or sold in Tennessee and Class States. As a result of Defendants' active, intentional and fraudulent concealment, Plaintiffs allege that the statute of limitations governing this action has been tolled.

## XI. CAUSES OF ACTION

### COUNT ONE:
### VIOLATION OF THE TENNESSEE TRADE PRACTICES ACT, § 47-25-101, ET SEQ. AND THE ANTITRUST STATUTES OF TWENTY-ONE OTHER CLASS JURISDICTIONS

61.     Plaintiffs and the Class incorporate herein by reference all of the foregoing paragraphs.

62.     The foregoing conduct of Defendants was directed at indirect purchasers in Tennessee and the other Class Jurisdictions and has substantially affected trade and commerce in Tennessee.

63.     The conduct of Defendants constitutes an unlawful arrangement, contract, agreement, trust, or combination in violation of the Tennessee Trade Practices Act, T.C.A. §47-25-101, et seq. and the antitrust statutes of the other Class Jurisdictions.

64.     During the period of Defendants' arrangement, contract, agreement, trust, combination, conspiracy and/or common course of conduct, Plaintiffs and members of the Class indirectly purchased Filters. Defendants' illegal conspiracy resulted in transactions for the purchase of Filters in Tennessee and the other Class Jurisdictions, which resulted in artificially-inflated prices. Defendants' conspiracy was directed at indirect purchasers in Tennessee and the other Class Jurisdictions.

15

65.   Beginning at least as early as January 1, 1999 and continuing thereafter, the precise dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain, or stabilize prices for Filters.

66.   In formulating and effectuating the alleged illegal contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain or stabilize the price of Filters. These activities included the following: (a) participating in meetings and conversations to discuss the prices of Filters; and (b) agreeing, during those meetings and conversations, to charge prices at certain levels and/or otherwise increase or maintain prices of Filters sold in Tennessee and the other Class states.

67.   By reason of Defendants' violations of the Tennessee Trade Practices Act (T.C.A. §§47-25-101, *et seq.*) and the antitrust statutes of the other Class Jurisdictions, Plaintiffs and members of the Class have been injured in that they have paid more for Filters than they would have absent the unlawful arrangement, contract, agreement, trust or combination. Defendants are thus in violation of or subject to the penalties imposed by the following provisions of the Tennessee Trade Practices Act:

T.C.A. §47-25-101:

> All arrangements, contracts, agreements, trusts or combinations between two persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this state, or in the manufacture, or sale of articles of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are declared to be against public policy, unlawful and void.

16

T.C.A. §47-25-104:

    (a)    Any corporation chartered under the laws of the state which violates any of the provisions of either §47-25-101 or §47-24-102 shall thereby forfeit its charter and its franchise, and its corporate existence shall thereupon cease.

    (b)    Every foreign corporation which commits such a violation is denied the right to do, and is prohibited from doing, business in this state.

    (c)    It is the duty of the attorney general and reporter to enforce these provisions.

T.C.A. §47-25-105:

All persons and corporations, and the officers and stockholders of all corporations, that become or continue to be members of, or in any way connected with or concerned in, any such trust, contract, agreement, or combination, shall be jointly and severally liable to pay all the debts, obligations, and liabilities of each and every person and corporation that become or continue to be a member thereof, connected therewith, or concerned therein, as fully as if all were partners in the creation of such debts, obligations and liabilities.

T.C.A. §47-25-106:

Any person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination, the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

68.    The foregoing conduct of Defendants is also in violation of the antitrust statutes

of the Class Jurisdictions of this Complaint for the same reasons as alleged in the foregoing

paragraphs with respect to the Class Members of each respective state.

| Alabama: | Ala. Code §6-5-60 et seq. |
|---|---|
| Arizona: | Ariz. Rev. Stat. §44-1401 et seq. |
| California: | Business and Professions Code, §§16750-16761 |
| District of Columbia: | D.C. Code Ann. §28-4501 |

| | |
|---|---|
| Hawaii: | Hawaii Rev. Stat. §480-1 et seq. |
| Iowa: | Iowa Code Ch. 553, §553.1 et seq. |
| Kansas: | Kan. Stat. Ann. §50-101 et seq. and §50-801 |
| Maine: | Me. Rev. Stat. Ann. Tit. 10, §§1101, 1104 |
| Michigan: | Mich. Comp. Laws. Ann. §445.771 et seq. |
| Minnesota: | Minn. Code Ann. §§325D.49 -325D.66 |
| Mississippi: | Miss. Code Ann. §75-24-1 et seq. |
| Nebraska: | Nebraska Rev. Stat. §59-801 et seq. |
| Nevada: | Nev. Rev. Stat. §59-801 et seq. |
| New Jersey: | N.J.S.A. §56:8-1 et seq. |
| New Mexico: | N.M. Stat. Ann. §57-1-3 |
| North Carolina: | N.C. Gen. Stat. §§ 75-1, 75-1.1, 75-2 |
| North Dakota: | N.D. Cent. Code §51-08.1-08 |
| South Dakota: | S.D. Codified Laws Ann. §37-1-14.3 and §37-1-33 |
| Vermont: | VT Statutes Title 9, Ch. 63, §2453 |
| West Virginia: | W.Va. Code §47-18-9 |
| Wisconsin: | Wisc. Stat. Ann. §§133.03 (1), 133.04, 133.16, 133.17 and §133.18 |

## COUNT TWO:
## THE TENNESSEE TRADE PRACTICES ACT APPLICABILITY
## TO NON-RESIDENTS OF TENNESSEE

69.    Plaintiffs re-allege and incorporate by reference all previous allegations in this Complaint with the same force and effect as if fully stated herein.

70.    During the entire Class Period, Defendants and their co-conspirators engaged in illegal conduct in Tennessee; this conduct substantially affected Tennessee commerce.

Tennessee permits any person injured indirectly, like the Plaintiffs and Class Members, to seek redress for their injuries arising out of illegal conspiracies. Specifically, the TTPA provides that:

> Any person who is injured or damaged by any such arrangement, contract, agreement, trust, or combination described in this part may sue for and recover, in any court of competent jurisdiction, from any person operating such trust or combination the full consideration or sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust.

71.    The non-Tennessee residents represented in this action are: Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, Massachusetts, Missouri, Montana, New Hampshire, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, Utah, Virginia, Washington, Wisconsin, and Wyoming.

### COUNT THREE:
### UNJUST ENRICHMENT

72.    Plaintiffs re-allege and incorporate by reference all previous allegations in this Complaint with the same force and effect as if fully stated herein.

73.    Defendants have benefitted from their illegal restraints of trade and acts which lessen or tend to lessen competition through the overpayment by Plaintiffs and the Class for Filters resulting from Defendants' illegal anticompetitive conspiracy in the Filters market.

74.    Defendants have benefitted from their illegal restraint of trade and acts which lessen or tend to lessen competition in the Filters market to the extent of the overpayments they have received and will continue to receive as a result of their anti-competitive behavior.

75.    To the extent Plaintiffs are required by any state's law to have exhausted remedies before bringing an unjust enrichment claim, exhaustion of such remedies is not required in this instance because (a) the issues are of the type that would be appropriate for judicial

19

determination (b) Plaintiffs would suffer substantial hardship if compelled to exhaust remedies (c) exhaustion of such remedies would be fruitless and (d) applying the doctrine here would result in substantial inequity and economic inefficiency and violate public policy.

76.     As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and Class members suffered injury and seek an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.     That the Court determine that this action may be maintained as a class action under Rules 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as interim class representatives and that Plaintiffs' counsel be appointed as interim counsel for the Class;

B.     That this Court declare, adjudge and decree that Defendants have committed violations of state antitrust laws and common law as alleged herein;

C.     That Plaintiffs and the Class recover damages, as provided by the applicable statutes;

D.     That Plaintiffs and the Class recover their costs of the suit; and

E.     That the Court award such other and further relief as it deems just and proper.

Dated: April 25, 2008.

Respectfully submitted,

/s/ Gordon Ball
Gordon Ball (Bar No. 11355)
550 W Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone: (865) 525-7028
Facsimile: (865) 525-4679

20

/s/ Chris Cadenhead
Chris Cadenhead
Cadenhead Law Firm
Pier 98 Centre
534 Harbor Boulevard /Suite 501
Destin, Florida 32541
Telephone: (850) 837-5509
Facsimile: (850) 682-8343

*Attorneys for Plaintiffs*

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS, BENTON DIVISION

| | | |
|---|---|---|
| CHAMPION LABORATORIES, INC, <br> a Delaware corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | Case No.:  06-4031JPG |
| WILLIAM G. BURCH, | ) <br> ) | |
| Defendant. | ) | |

### AFFIDAVIT OF WILLIAM G. BURCH

COUNTY OF TULSA       )
                                      ) ss.
STATE OF OKLAHOMA   )

WILLIAM G. BURCH, being of lawful age and first duly sworn, hereby deposes and states as follows:

1.     This affidavit is made on the basis of direct personal knowledge.

2.     I went to work for Champion Laboratories, Inc. ("Champion") in 1999 as National Accounts Manager.  Later, my position was changed to Division Sales Manager.

3.     During the time that I worked for Champion, I never had a written contract.  I was always an "at will" employee.

4.     During the time that I worked for Champion, I became aware that Champion was engaged in activities that violated federal law, Oklahoma law and Oklahoma public policy.

5.     In particular, I became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing.   For example, Champion



EXHIBIT
A

provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case (the "Mediation Statement"). *See* Mediation Statement at 3-8.

6.    In addition, I became aware that Champion was discriminating in price between different purchasers of commodities of like grade and quality.    Further information is set forth accurately and in detail on pages 3-8 of the Mediation Statement.

7.    During the time that I worked for Champion, I was directed by Champion to conduct discussions regarding "pricing" with employees of competitors of Champion. I refused to conduct those discussions. I objected to price discrimination being conducted by Champion. *See* Mediation Statement at 3-8.

8.    Before I worked for Champion, I worked for Purolator Products Company ("Purolator"). *See* Mediation Statement at 3. In my employment negotiations with Champion, I talked with Champion's Senior Vice President (John Evans) and Sales Director (Al Henager). Evans and Henager told me that they would have to "work with me" to (a) give me a car allowance comparable to that paid by Purolator and (b) underwrite the expense of my small home office. They told me to make creative use of my expense account to cover the amount of my car payments and home office (approximately $450.00 per month). While I was not comfortable with this arrangement, I thought that Evans and Henager were authorized to compensate me in whatever manner they saw fit. *See* Mediation Statement at 1.

2

9. On July 10, 2000, Henager came to Tulsa for dinner at my house. The sole purpose of his trip was to inspect my home office and to obtain receipts for the home office and the monthly car payment. Henager had dinner with my wife, my children and me and left Tulsa the next day. There were no customer meetings. No other company business was conducted. *See* Mediation Statement at 1.

10. I attempted to cover my home office expenses and my car allowance by submitting expense reports for imaginary drives to Bentonville, Arkansas. It was difficult to cover the expenses. I complained to Evans and Henager. *See* Mediation Statement at 2.

11. Eventually, Evans told me that he would personally make sure that I could directly purchase full fare air tickets without going through the Champion travel agent. This procedure–self-booking of airfare—was set up by Evans in direct violation of Champion's travel policy. That policy provided that: "The actual cost of air or land transportation will be allowed and should be secured through a travel agency approved by the corporation." *See* Mediation Statement at 2.

12. Evans' plan allowed me to drive to the customers, submit expense reports for flights I did not take, and pocket the difference, as needed, to cover non-reimbursed home office and car expenses. I complained to my wife and to my friend Pat Donica that I was never comfortable with the Evans' plan. *See* Mediation Statement at 2.

13. On January 13, 2006, I was called to Champion headquarters in Albion, Illinois. The ostensible purpose of the meeting was to have a meeting with Evans regarding my Firestone account. The people setting up the meeting told me twice to

3

bring my computer because of a new company software they wanted to install. *See* Mediation Statement at 2.

14.     When I arrived at Champion headquarters for the meeting on January 13, 2006, I was surprised to meet with a controller from Champion and an FBI agent. The FBI agent immediately confronted me with allegations of embezzlement through my expense account. *See* Mediation Statement at 2.

15.     I told the FBI agent that the activity with the expense accounts had been authorized by Champion employees—Evans and Henager. Disbelieving my explanation, the FBI agent asked what other illegal activities Champion had asked me to do. I told the FBI agent, "Well, there was the price fixing." At this point, the Champion controller turned white and ran from the room, leaving me alone with the FBI agent. *See* Mediation Statement at 2.

16.     I asked the FBI agent what he would do if he were in my situation. He said that he "couldn't say." When I pressed further, the FBI agent said: "You know that computer of yours they want so bad? I wouldn't give them that because it appears they have bigger problems than you have." *See* Mediation Statement at 2.

17.     I turned my computer and all its evidence over to the FBI on Wednesday, January 18, 2006. To my knowledge, the FBI still has the computer. *See* Mediation Statement at 2.

18.     I have never been arrested for embezzlement.

19.     Following the meeting on January 16, 2006, Champion terminated my employment.

4

20.    As a result of my termination, I have lost salary and incurred expenses in an amount in excess of $75,000.00.

FURTHER AFFIANT SAYETH NOT.

_William G. Burch_
WILLIAM G. BURCH

Subscribed and sworn to before me on this  **25**  day of March, 2008.

_Sharon R. Poole_
Notary Public

My Commission Expires:

SHARON R. POOLE
CREEK COUNTY
Notary Public in and for
State of Oklahoma
Commission # 00016378
Expires: October 31, 2008

5

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

RANDALL BETHEA on behalf of himself and all others similarly situated in Tennessee

## DEFENDANTS

CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A., LLC;

**(b)** County of Residence of First Listed Plaintiff   Cocke County, Tenne
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Cook County, Illinois
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Gordon Ball, Ball & Scott, 550 W Main, Suite 601, Knoxville, TN 37902 (865)525-7028

Attorneys (If Known)

Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

(full nature of suit checklist — none marked)

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. 1332(d)

Brief description of cause: Anti-trust/Price-fixing

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 5,000,001.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE n/a   DOCKET NUMBER

DATE 04/29/2008

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE